**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JULIE GENGO** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-06-340** |
| | § | |
| **TARGET NATIONAL BANK** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Pending before the Court are Plaintiff, Julie Gengo's Motion for Partial, Interlocutory

Summary Judgment (**Instrument No. 20**); Defendant, Target National Bank's Motion for Summary

Judgment (**Instrument No. 23**); and Defendant's Motion to Strike Affidavits (**Instrument No. 25**).

### I.

On February 1, 2006, Plaintiff Julie Gengo ("Plaintiff" or "Gengo") filed suit against

Defendant Target National Bank ("Defendant" or "Target") alleging violations of both the Truth in

Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and the Fair Credit Billing Act ("FCBA"), 15

U.S.C. § 1666, et seq. (Instrument No. 1, at 1). More specifically, Plaintiff alleges that Defendant has

committed at least 287 violations of the TILA and the FCBA. (*Id.*). Plaintiff seeks a statutory damage

award of at least $287,000; the costs of this action; attorneys' fees; an order requiring Defendant to

correct reports made to the credit reporting bureaus and for Plaintiff's account to be reopened;

minimum payments to resume from the date of the first alleged notice of billing error; and a credit for

any fees or charges made to Plaintiff's count as a result of Defendant's alleged violation of the FCBA.

(*Id.*, at 2). On May 19, 2006, Defendant filed a counterclaim against Plaintiff alleging breach of

contract (specifically, failure to pay for goods and services charged on Plaintiff's account) and unjust enrichment. (Instrument No. 7, at 6-9). Defendant seeks damages of at least $8,003; costs and disbursements; and attorney's fees. (*Id.*, at 9).

On or about December 18, 1997, Plaintiff Gengo applied for a credit card account with Defendant Target. (Instrument No. 7, at 6; Instrument No. 21, at 2). Thereafter, Defendant approved Plaintiff's credit card application, and Plaintiff entered into an open-ended credit card agreement with Defendant and was given a credit card account number, XXXX-XXXX-XXXX-7396. (Instrument No. 21, at 2). The credit card was used primarily to purchase both goods and services, and Defendant mailed monthly credit card statements to Plaintiff that reflected the amount of goods and services purchased as well as the balance due for the purchases made by Plaintiff. (Instrument No. 21, at 2; Instrument No. 7, at 6). Plaintiff's credit card balance is now roughly $8,003. (Instrument No. 7, at 6).

On June 15, 2005, Plaintiff submitted to Defendant the first of several notices of billing errors, as dubbed by Plaintiff, allegedly pursuant to 12 C.F.R. § 226.13 and 15 U.S.C. § 1666. (Instrument No. 1, at 1). Generally, all of the notices of billing errors that were sent to Defendant contained similar information. Specifically, the notices state the following, "[b]ecause I believe I should not have been charged finance charges or fees for the history of the account, I dispute the accuracy of the following items on my statements which have been calculated based on the inclusion of those charges: the current balance, the amounts and payments due and all finance charges and other fees charged since this account was opened." (Instrument No. 21, Exhibit A). Further, the June 15th notice goes on to state that specific amounts listed on the statement dated June 6, 2005 were being disputed by Plaintiff, namely: the alleged current balance of $6,992; the alleged finance charges of $115.75, fees

2

of $35.00; and the minimum payment allegedly due of $347.00. (*Id.*). Additionally, Plaintiff states in the notice that she believed Defendant had failed to give all of the proper disclosures required by law prior to the opening of her account, as well as additional disclosures subsequent to that time. (*Id.*). The notice concludes with several requests for "clarification regarding all [] extensions of consumer credit, including all documentary evidence of such. . . ." (*Id.*).

Plaintiff alleges that Defendant neither responded nor acknowledged the notices of billing errors that were sent. (Instrument No. 21, at 3). Moreover, Plaintiff states that she never received any clarification from Defendant as to why her account was accurate. (*Id.*). Instead, Plaintiff states that Defendant sent letters only in an attempt to collect the debt owed, sent more statements, restricted the account, and ultimately, closed Plaintiff's account. (*Id.*, at 4). Defendant has, however, provided evidence that it did respond to each of Plaintiff's notices, albeit Defendant's responses did not comply with the requests Plaintiff made in her letters to Defendant, but rather dismissed the requests and proceeded to request payment of debt. (Instrument No. 24, at 5, n.11).

On November 27, 2006, Plaintiff filed this Motion for Partial Summary Judgment along with Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial, Interlocutory Summary Judgment (Instrument Nos. 20, 21). Plaintiff seeks summary judgment on her claims under the TILA and FCBA and on Defendant's counterclaim for breach of contract. (*Id.*). Although Plaintiff has styled her Motion as one for partial, interlocutory summary judgment, this Motion actually seeks summary judgment on all of the claims Plaintiff has made in this lawsuit, save a calculation of damages. First, Plaintiff argues that Defendant has violated the Truth in Lending Act, the Fair Credit Billing Act, and Regulation Z, as Defendant has failed to provide Plaintiff with disclosures and other documents that were requested via notices of billing errors. (Instrument No. 23, at 8). Next, Plaintiff

3

argues that the notices of billing errors constituted valid notices pursuant to 15 U.S.C. § 1666(a)(1), (2) and (3) and 12 C.F.R. § 226.13. (*Id.*). Moreover, Plaintiff goes on to argue that Defendant has violated the Fair Credit Billing Act because it failed to respond to Plaintiff's inquiries and the violation occurs "regardless of whether the consumer who sent the notice was correct in his belief." (*Id.*, at 13-14). Finally, Plaintiff argues that Defendant's counterclaim cannot be maintained because it is a violation of 15 U.S.C. § 1666(e) and 12 C.F.R. § 226.13(d) "to attempt to collect a portion of the required payment that is related to an amount in dispute and which has not been resolved pursuant to 12 C.F.R. § 226.13(e) or (f)." (*Id.*, at 18).

On December 19, 2006, Defendant filed its Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment (Instrument No. 24). Defendant argues that Plaintiff's complaint only alleges violations of the Fair Credit Billing Act, and not also violations under the Truth in Lending Act. (*Id.*, at 5-6). Defendant then states that even if Plaintiff's complaint does include allegations that Defendant violated the Truth in Lending Act, Defendant contends that any such claims are barred, as violations of the Truth in Lending Act must be brought within one year from the date of the occurrence of the violation. (*Id.*, at 6). Next, Defendant argues that because Plaintiff's notices of billing errors challenge all of the finance charges or fees for the history of Plaintiff's account, this Court must bar Plaintiff's claim because the alleged violations occurred more than 60 days prior to Defendant's receipt of the first notice of billing errors. Further, Defendant argues that Plaintiff's notices do not constitute billing errors under the law because finance charges are not extensions of credit, and because the Fair Credit Billing Act does not deem everything a billing error, even if it is Plaintiff's belief that certain charges and fees are billing errors. (*Id.*, at 10-12).

4

On December 1, 2006, Defendant filed its Motion for Summary Judgment (Instrument No. 23). Defendant seeks summary judgment on Plaintiff's claims under the TILA and FCBA and on its counterclaim for breach of contract. Defendant's Motion for Summary Judgment includes the same arguments Defendant made in its Response to Plaintiff's Motion for Partial Summary Judgment. (*Id.*).

On December 20, 2006, Plaintiff filed her Response in Opposition to Defendant's Motion for Summary Judgment (Instrument No. 29). Plaintiff's Response, too, includes many of the same arguments Plaintiff set forth in her Motion for Partial Summary Judgment. (*Id.*). Plaintiff does aver that Defendant has mischaracterized both Plaintiff's allegations and the law related to those allegations. (*Id.*, at 4-5). Plaintiff also challenges Defendant's assertion that Plaintiff has entered into this lawsuit as a way in which to avoid repaying her debt. (*Id.*, at 5). Plaintiff reiterates that she "is simply a consumer who sent in correspondences, seeking a response. . ." (*Id.*).

On December 19, 2006, Defendant filed its Motion to Strike Affidavits of Roberta A. Carpenter and Denise Davis (Instrument No. 25). Defendant requests this Court to strike the affidavits included in Plaintiff's summary judgment evidence because Plaintiff failed to identify the two individuals during discovery, and because Defendant argues that the affidavits are irrelevant and that Plaintiff has concealed portions of Denise Davis' affidavit. (*Id.*, at 1).

On December 2006, Plaintiff filed her Response in Opposition to Defendant's Motion to Strike Affidavits of Roberta A. Carpenter and Denise Davis (Instrument No. 26). Plaintiff states that the reason the two affidavits at issue were not presented to Defendant during discovery is because the documents are merely collateral documents, which are not actually a part of Plaintiff's case. (*Id.*, at 1). Plaintiff argues, further, that the affidavits are intended to solidify one narrow issue–"banks can and do respond to form billing error notice letters." (*Id.*).

5

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248. If the evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted. *See id.* at 2511; *see also Thomas v. Barton Lodge, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886-88 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'"

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)) (emphasis in original). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue.").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.

Plaintiff Gengo has brought this action against Defendant Target for failing properly to answer Plaintiff's document/clarification requests following several correspondences sent to Defendant by Plaintiff alleging that billing errors were present on Plaintiff's account statements. More specifically, Plaintiff has alleged that Defendant has violated both the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. and the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, et seq. (Instrument No. 1). In response, Defendant asserted a counterclaim against Plaintiff alleging both breach of contract and unjust enrichment. This Court will address Plaintiff's allegations and Defendant's counterclaim in turn.

7

## A.

In Plaintiff Gengo's Original Complaint, she summarily states that she has filed this suit against Defendant Target for violations of the TILA, 15 U.S.C. § 1601, et seq. (Instrument No. 1). Defendant, on the other hand, argues that nowhere in Plaintiff's complaint does she purport to state a claim for failure to make disclosures under the TILA, but rather that Plaintiff's Complaint includes allegations that are colorable only under the FCBA. (Instrument No. 24, at 5-6). Further, Defendant contends that even if Plaintiff's Complaint does sufficiently allege claims under the TILA, any such claims are barred by the applicable statute of limitations. (*Id.*, at 6).

"The purpose of TILA is to promote the informed use of credit by mandating a meaningful disclosure of credit terms to consumers." *Collier v. Wells Fargo Home Mortgage as Successor in Interest to Norwest & Parker Square Bank*, No. 04-086, 2006 WL 1464170, at *4 (N.D. Tex. May 26, 2006) (citing 15 U.S.C. § 1601; *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370 n.16 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 261 (2001); *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 459 (5th Cir. 1999)). The TILA requires creditors to disclose all of the credit terms to the consumer before the extension of credit is made, which allows the consumer to make an informed decision about the credit options that are available as well as serves as a way in which to prevent the consumer from being obligated to pay possible hidden and unreasonable charges unknowingly. *Id.* (citing 15 U.S.C. § 1601; *Landreneau v. Fleet Financial Group*, 197 F.Supp.2d 551, 555 (M.D. La. 2002; 12 C.F.R. § 226.17(b) (creditor shall make disclosures before consummation of the transaction)). The TILA also requires lenders to issue new disclosures within a specified amount of time in the event that an interest rate adjustment occurs. 12 C.F.R. §

226.20(c)(1)-(5). The applicable statute of limitations is one year for issues that fall under the TILA. 15 U.S.C. § 1640(e); *FDIC v. Enventure V.*, 77 F.3d 123, 125 (5th Cir. 1996).

While Plaintiff's Original Complaint includes a singular reference to the TILA, Plaintiff spends little to no time in her briefing discussing how Defendant allegedly failed to make the proper disclosures to Plaintiff required by TILA prior to Plaintiff opening a line of credit with Defendant. The crux of Plaintiff's memorandum appears to focus on Defendant's failure to respond to the inquiries Plaintiff made to Defendant about her account, but not Defendant's failure to provide Plaintiff with the proper disclosures prior to the opening of Plaintiff's account. (*See* Instrument No. 21). In Plaintiff's Motion she states, "[w]hether or not Defendant was in compliance with its disclosure requirements (which is questionable, as Defendant refused to provide the documents), it is still out of compliance with the FCBA's clear rules regarding mandatory procedures for responses to customer inquiries." (Instrument No. 21, at 8).  From what this Court is able to discern from Plaintiff's briefing, Plaintiff appears to have intertwined the issues of (1) general, initial disclosure requirements under the TILA prior to the opening of a line of credit and (2) more specifically, correction and resolution of billing errors under the FCBA. *See* 47 C.J.S. *Interest & Usury* § 510 (2007) (stating that "[t]he Fair Credit Billing Act amended the Truth in Lending Act for the purpose of protecting the consumer against unfair and inaccurate credit billing and credit card practices") (citations omitted). In erring on the side of caution, to the extent that Plaintiff has alleged that Defendant has violated TILA, the Court will analyze any potential violations of TILA in the context of the summary judgment motions before the Court.

In viewing the evidence in the light most favorable to the Plaintiff, the Court does not find that Plaintiff has properly asserted a claim against Defendant under the TILA, as there is no evidence that

Defendant failed to make the proper initial disclosures prior to Plaintiff opening her account with Defendant. Even assuming that Plaintiff has properly asserted a TILA claim against Defendant, such a claim would be subject to the Act's one-year statute of limitations. To determine when the one-year statute of limitations period should begin to run, the Fifth Circuit has followed the Rule 6(a) computation method for federal statutory time limits. *Lawson v. Conyers Chrysler, Plymouth, & Dodge Trucks, Inc.*, 600 F.2d 465, 466 (5th Cir. 1979). Rule 6(a) of the Federal Rules of Civil Procedure states "[i]n computing any period of time prescribed or allowed by these rules . . . the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included . . . FED. R. CIV. P. 6(a).

For further guidance to make a determination regarding when the limitations period should begin when an open-end credit arrangement is at issue, as is the case here, the Court has looked to other Circuit courts. Both the Sixth and the Seventh Circuits have drawn distinctions between open-end and close-end credit arrangements. Specifically, *Goldman v. First Nat'l Bank*, 532 F.2d 10 (7th Cir.), *cert. denied*, 429 U.S. 870 (1976) involved a plaintiff who had obtained an open-end credit card from the defendant, but opted not to use the credit card until months after receiving the credit. Because the plaintiff always paid his bill in full, the plaintiff was not assessed a finance charge until almost one year after receiving the credit card. At the time that the plaintiff was assessed a finance charge, he believed there existed a discrepancy between the way in which the finance charge had been calculated and the way in which the disclosure statement described that the charge would be calculated. The plaintiff eventually sued and alleged a TILA violation, and defendant argued that the statute of limitations had expired. The Seventh Circuit disagreed and held that the statute of limitations did not begin to run until the first finance charge was imposed on the plaintiff's account.

10

*Id.* at 21; *see also Jones v. TransOhio Savings Association*, 747 F.2d 1037, 1042 (6th Cir. 1984) (recognizing a distinction between open-end and close-end credit transactions).

It is undisputed that Plaintiff Gengo opened an open-end credit card account with Defendant Target in December 1997. Whether or not the statute of limitations began running from that date of credit extension, or at least shortly after that date credit was extended, if the limitations period is determined to have started when the first finance charges were assessed against Plaintiff's account, it is clear that Plaintiff did not file a lawsuit against Defendant until February 2006—well after the expiration of the one-year statute of limitations (under both limitations computation methods).

Plaintiff has not asserted any reasons as to why or presented any evidence to prove that the limitations period should be tolled. "To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct." *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) (citing *In Re Beef Indus. Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979)). Plaintiff's June 15, 2005 notice to Defendant indicates that Plaintiff is disputing finance charges that had been assessed for the history of her account, but there is little to no indication as to why Plaintiff waited until 2005 to bring the alleged, erroneous charges to Defendant's attention. Therefore, even assuming Plaintiff has properly asserted a TILA claim against Defendant for improper disclosure, such a claim cannot stand, as it runs afoul the statute of limitations. To the extent that Plaintiff has alleged a TILA claim against Defendant, it is barred by limitations. Accordingly, Plaintiff's Motion for Summary Judgment as to Defendant's compliance with TILA, generally, is **DENIED**. Further, Defendant's Motion for Summary Judgment with respect to the same is **GRANTED**.

**B.**

Because this Court has determined that Plaintiff's claims are more properly couched as violations of the FCBA, the Court must now make the determination as to whether, generally, Plaintiff's notices sent to Defendant complied with the FCBA, 15 U.S.C. § 1666(a) and 12 C.F.R. 226.13(b), and whether, more specifically, Plaintiff's letters involve billing errors as defined by the FCBA.

The Fair Credit Billing Act or FCBA, 15 U.S.C. § 1666-1666(j), enforced by the TILA, sets forth dispute resolution procedures for both debtors and creditors. Pursuant to the FCBA, a debtor must provide the creditor/lender written notice within sixty days of receiving a challenged statement. 15 U.S.C. § 1666(a). Regulation Z, 12 C.F.R. § 226.13, governs the implementation of the FCBA and includes more specific information regarding the start of the sixty-day period for filing a notice by stating that the period begins to run "after the creditor [has] transmitted the first periodic statement that reflects that alleged billing error." 12 C.F.R. § 226.13(b)(1). In other words, the sixty-day period starts to run upon the initial receipt of a disputed statement. *Pinner v. Schmidt*, 805 F.2d 1258, 1264 (5th Cir. 1986). Under section 1666(b), a billing error consists of any of the following:

> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
> (3) A reflection on a statement of goods or services not accepted by the obligor of his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.
> (4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.
> (5) A computation error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Board.

Further, the notice provided by the consumer to the creditor must (1) enable the creditor to identify the name and account number of the obligor; (2) indicate the obligor's belief that the statement contains a billing error; and (3) state the reason for the obligor's belief that there is an error. 15 U.S.C. § 1666(a)(1)-(3).

Upon receipt of a timely notice from the consumer, the creditor must send the consumer written acknowledgment that the notice was received within thirty days. 15 U.S.C. § 1666(a)(A); *American Express Co. v. Koerner*, 452 U.S. 233, 235-37 (1981). In addition, the creditor is required to investigate the disputed matter and either (1) make timely corrections or (2) send the consumer a timely written explanation of why the original statement was correct before any attempt on behalf of the creditor to collect the disputed amount. 15 U.S.C. § 1666(a)(B); *Koerner*, 452 U.S. at 235-37. Creditors are given the earlier of ninety days or two full billing cycles of the creditor after receipt of the notice to respond to the disputed matter. *Id.*

Plaintiff maintains that if Defendant had acted in compliance with the response requirements articulated in the FCBA and Regulation Z, this lawsuit would not have been necessary. (Instrument No. 21, at 8). First, Plaintiff asserts that her initial notice constitutes a valid billing error notice under the statutory requirements of the FCBA because Plaintiff's notice includes all of the requisite information required under 15 U.S.C. § 1666(a)(1), (2) and (3); namely, the notice includes her name and account number, and a statement as to why she believes her statement contains a billing error. (*Id.*). Additionally, Plaintiff argues that the error asserted in her notice is indeed a billing error as

defined by 15 U.S.C. § 1666(b) and 12 C.F.R. § 226.13(a), as Plaintiff argues that the finance charge is an extension of credit as defined under the relevant statutes. (*Id.*, at 11). Finally, Plaintiff avers that Defendant has violated the FCBA because "[s]ection 1666's requirements that a creditor promptly respond to consumer inquiries is [sic] triggered upon receipt of a timely notice of 'billing error' *regardless of whether the consumer who sent the notice was correct in his belief* that an error had been made." (*Id.*, at 13) (emphasis in original).

Defendant argues that Plaintiff's first notice is untimely under Regulation Z because Defendant did not receive the notice 60 days after it transmitted the first periodic statement that reflects the alleged billing errors, but rather it received Plaintiff's notice within 60 days following the date of the statement being disputed by Plaintiff. (Instrument No. 24, at 6-7). Defendant's argument focuses on the following specific language used in Plaintiff's notice, "[b]ecause I believe I should not have been charged finance charges or fees *for the history of the account*, I dispute the accuracy of the following items on my statements . . ." (*Id.*, at 8) (emphasis added). Secondly, Defendant argues that Plaintiff's notices do not involve billing errors as defined by the FCBA because finance charges are merely incidents to the extension of credit, but not themselves extensions of credit. (*Id.*, at 10). Defendant goes on to argue that simply because Plaintiff has dubbed something a billing error does not necessarily make it a billing error under the Act. Moreover, Defendant attempts to make what the Court has determined to be a trivial distinction with respect to when a creditor's duties are triggered by an obligor who makes a mistake of fact about an alleged billing error and an obligor who makes a mistake of law about a billing error. (*Id.*, at 11-12). Further, it is Defendant's interpretation that the statutory requirements for Plaintiff to assert a billing error properly impose upon Plaintiff a

14

duty to indicate her belief that the statement contains a billing error as the statute defines a billing error. (Instrument No. 23, at 7-10).

Plaintiff sent her first notice of billing error to Defendant on June 15, 2005 (and sent several similar letters following that). (Instrument No. 21, Exhibit A). The letter includes Plaintiff's name and account number, the specific amounts of the alleged billing error, and Plaintiff's belief and reasons that the June 6, 2005 statement contains a billing error. Plaintiff's June 15, 2005 letter disputed the following:

1.  the alleged current balance of $6,991.69,
2.  the alleged finance charges of $115.75, fees of $35.00 [assessed on the June 6, 2005 statement only], and
3   the minimum payment [] of $347

(*Id.*, at Exhibit A). Also, in that June 15, 2005 letter (along with Plaintiff's other letters mailed to Defendant), Plaintiff requested "additional clarification regarding all such extensions of consumer credit, including all documentary evidence" pursuant to the billing error provision under 15 U.S.C. § 1666(b)(2). (Instrument No. 21, Exhibit A). Plaintiff's letter goes on to list, specifically, seven types of documents sufficient to fulfill Plaintiff's request for clarification.

## 1.

Defendant argues that Plaintiff's letters were untimely because Plaintiff's letters were received by Defendant well after sixty days of the alleged billing errors–namely, that Target failed to give all of the proper disclosures required by law prior to the opening of the account. This argument is triggered in large part because Plaintiff chose to use language in her letters that challenges not only the finance charges and fees assessed in conjunction with the disputed statement, but also all of the

finance charges or fees assessed on Plaintiff's account for the history of the account. (Instrument No. 21, Exhibit A). The following specific language is used in Plaintiff's letter:

> Because I believe I should not have been charged finance charges or fees for the history of the account, I dispute the accuracy of the following items on my statements which have been calculated based on the inclusion of those charges: the current balance, the amounts and payments due and all finance charges and other fees charged since this account was opened.

(*Id.*). Plaintiff admits in her own briefing, too, that "[t]he billing error notice could not request clarification and assert an error to a statement that was sent more than 60 days ago." (Instrument No. 29, at 13). Plaintiff's position, however, with respect to this issue is a bit contradictory. On the one hand, Plaintiff writes in her letter that she wishes to dispute <u>all</u> of the finance charges and fees assessed on her account for the history of the account, and on the other hand, Plaintiff states that she "requested clarification and documentary evidence while disputing an amount, the monthly finance charge for the most recent month(s) only." (*Id.*).

Pursuant to the Code of Federal Regulations or Regulation Z, the sixty-day period begins to run "after the creditor [has] transmitted the *first* period statement that reflects the alleged billing error." 12 C.F.R. § 226.13(b)(1) (emphasis added); *see also Dawkins v. Sears Roebuck & Co.*, 109 F.3d 241, 243 (5th Cir. 1997) (same). Plaintiff contends that the "amount(s) asserted as billing errors appeared for the first time on the statement disputed." (Instrument No. 29, at 13). Plaintiff also concedes that while other statements also included finance charges, those statements "did not contain a 1666(b)(2) billing error because the obligor did not request clarification of the amounts." (*Id.*, at 14). The resolution of this issue in this case comes down to what each party considers to be the billing error. Defendant would lead this Court to believe that the billing error noted by Plaintiff is

Defendant's failure to provide proper disclosures prior to the opening of the account, but Plaintiff has continually maintained her position regarding the billing errors she claims in her letter (1666(b)(2)–reflection on a statement of an extension of credit for which the obligor requests additional clarification; and 1666(b)(5)–computation error or similar error of accounting nature). The Plaintiff suggests that this Court ignore the Regulation Z, as Plaintiff believes the statute to be clear and unambiguous on the sixty-day notice issue. (Instrument No. 29, at 14).

In liberally construing the requirements of the TILA/FCBA, this Court finds that Plaintiff has timely sent letters to Defendant regarding statements beginning June 6, 2005, as that letter (and the letters mailed after that date) does challenge the finance charges and fees assessed in that specific statement. The Court holds that Plaintiff may challenge the finance charges and other penalty fees assessed in June 2005 and beyond, but not the finance charges and fees that were assessed in statements that came before the statement issued on June 6, 2005.

### 2.

Next, Defendant takes issue with the language chosen by Plaintiff in her notice–namely, the fact that Plaintiff states that the reason she believes the June 6, 2005 statement contains billing errors is due to Defendant's alleged failure to give all of the proper disclosures required by law to Plaintiff prior to opening the account, and additional disclosures since that time. (Instrument No. 21, Exhibit A). Plaintiff argues that Defendant has misinterpreted what she has asserted as a billing error, stating that "failure to give required disclosures was _not_ the billing error, but the _reason_ for the first billing error . . ." (Instrument No. 29, at 6). Again, Plaintiff clearly listed in her letter the billing errors it believed to be at issue–(1) the current balance; (2) the finance charges assessed on the statement; and (3) the minimum payment due. (Instrument No. 21, Exhibit A). The statutory language only requires

the consumer to believe that such a billing error has occurred. The statute does not state that the consumer's assertion of a billing error must be correct in order to trigger the creditor's obligation to respond according to the statutory requirements. *See* 1666(a)(2-3). Defendant makes an attempt here to impose upon Plaintiff/consumer an additional duty to ascertain whether her belief that a billing error exists is correct in the law prior to asserting the belief in the form of a notice of billing error. The Court disagrees with Defendant's interpretation of the statutory language, and is unwilling to impose such a duty on Plaintiff because TILA is remedial in nature, and it must be interpreted liberally in favor of consumers to achieve Congress's purpose. *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475 (5th Cir. 1995); *see also Raney v. First Nat'l Bank of Nebraska, Inc.*, No. 06-8-DLB, 2006 WL 2588105, at *3 (E.D.Ky. Sept. 8, 2006) ("Notwithstanding the nature of the Plaintiffs' beliefs that a failure to disclose was the reason for the billing error, Plaintiffs' beliefs as to why the billing error occurred is not dispositive to their FCBA claim.").

### 3.

Lastly, Defendant asserts that a finance charge is not a billing error as required by § 1666. While the statutory definitions of billing errors do not expressly include finance charges and fees, the statute does, at the very minimum, contemplate the inclusion of such within the definitions of billing errors, as the creditor is prohibited from collecting any portion of the debt that is disputed, *which may include finance charges on amounts in dispute.* 15 U.S.C. § 1666 (c), (e) (emphasis added); *see also Eicken v. USAA Federal Savings Bank*, No. 05-4139, 2006 WL 1663371, at *2 (S.D. Tex. June 12, 2006). Additionally, Defendant's arguments that a finance charge does not constitute a billing error is not persuasive because the request made by Plaintiff in her letter could easily fall under the rubric

of § 1666(b)(2), which defines a billing error as "[a] reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." Moreover, nothing in the statute expressly rejects the notion that finance charges and fees can constitute billing errors. *See Raney*, 2006 WL 2588105, at *3. In fact, given how liberally provisions of the TILA are interpreted, this Court concludes that finance charges and fees may qualify as billing errors for purposes of meeting § 1666's requirements. Further, under § 1666(b)(2), the consumer is only required to request additional clarification including documentary evidence to help resolve any error. It is undisputed that Plaintiff's letter(s) included such requests. Plaintiff also points out that not only did she contest the finance charges and fees assessed, she also contested the amounts of the minimum payment and total balance due, which could qualify as a billing error under § 1666(b)(5) (defining a billing error as a computation error or similar error of an accounting nature of the creditor on a statement). In liberally construing the TILA/FCBA provisions, this Court believes that Plaintiff has demonstrated adequately that she has in fact asserted a billing error sufficient to bring her letter in compliance with the FCBA requirements.

### 4.

The notice sent by Plaintiff to Defendant includes Plaintiff's name and account number, the specific amounts of the alleged billing errors, and Plaintiff's belief and reasons that the June 6, 2005 statement contains a billing error–thereby, satisfying the requirements of § 1666(a)(1-3). Further, this Court has determined that Plaintiff's reason for believing a billing error exists is not dispositive to her FCBA claim, and the erroneously assessed finance charges and fees along with other computation errors fall within Congress's contemplated definition of billing errors.

Because this Court has found that Plaintiff has met the requirements under § 1666 to deem her letters valid billing error notices, Defendant's duty to respond to Plaintiff's requests was triggered. The evidence demonstrates, however, that while Defendant did acknowledge receipt of one or two of Plaintiff's notices, Defendant did not comply fully with the statutory requirements that outline the two proper ways in which a creditor should respond to a billing error notice. Section 1666(B)(i-ii) requires creditors to:

> (1) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor [] and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or
> (2) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness.

There has been neither any evidence presented to the Court which shows that Defendant has bothered to undertake an investigation of Plaintiff's billing errors, nor has any evidence been presented to the Court which could demonstrate that Defendant has complied with its duties when a billing error has been alleged. Therefore, this Court finds that Defendant has violated the FCBA. Accordingly, Plaintiff's Motion for Summary Judgment with respect to the validity of her billing error notices, and more generally, her FCBA claim is **GRANTED in part** and **DENIED** in part, as the Court has limited the claim to violations that occurred from June 6, 2005 until the close of the account. In addition, Defendant's Motion for Summary Judgment with respect to Plaintiff's FCBA claim is **GRANTED in part** and **DENIED in part**. This result obviously leaves open the issue of damages related to the Plaintiff's claims from June 15, 2005 until the close of the account. In order to make

20

a determination as to the proper amount that should be assessed, the Court will enter a separate order instructing the parties to appear for a hearing on damages.

## C.

Defendant has asserted a counterclaim against Plaintiff for breach of contract (related to Plaintiff's failure to pay for the good and services that were charged on Plaintiff's credit card issued by Defendant) and unjust enrichment. (Instrument No. 7). Plaintiff argues that Defendant's counterclaim cannot be maintained because "[i]t is a violation of 15 U.S.C. § 1666(e) and 12 C.F.R. § 226.13(d) to attempt to collect a portion of the required payment that is related to an amount in dispute and which has not been resolved pursuant to 12 C.F.R. § 226.13 (e) or (f)." (Instrument No. 21, at 18). Section 226.13(d) states:

> Rules pending resolution. Until a billing error is resolved under paragraph (e) or (f) of this section, the following rules apply:
> (1) Consumer's right to withhold disputed amount; collection action prohibited. The consumer need not pay (and the creditor may not try to collect) any portion of any required payment that the consumer believes is related to the disputed amount (including related finance or other charges).

*See also* 15 U.S.C. § 1666(e) (stating that creditor who fail to comply with the requirements of the section forfeit their rights to collect the disputed portion, including finance charges). The Court has determined that Defendant has failed to comply with the relevant statutes and regulations regarding resolution of billing errors asserted by consumers. Therefore, because the disputed amount has been limited to the finance charges and fees that appear on Plaintiff's statements dated June 6, 2005 until the close of the account, Defendant's counterclaim for the collection of the disputed balance of Plaintiff's account can only be partially maintained pursuant to 15 U.S.C. § 1666(e) and 12 C.F.R.

§ 226.13(d).  Accordingly, Plaintiff's Motion for Summary Judgment with respect to Defendant's counterclaim is **GRANTED in part** and **DENIED in part** and Defendant's Motion for Summary Judgment with respect to the same is **GRANTED in part** and **DENIED in part**.

IV.

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (**Instrument No. 20**) is **GRANTED in part and DENIED in part**. Further, IT IS ORDERED that Defendant's Motion for Summary Judgment (**Instrument No. 23**) is **GRANTED in part** and **DENIED in part** and Defendant's Motion to Strike (**Instrument No. 25**) is **GRANTED**. Lastly, the Court will enter a separate order instructing the parties to appear for a hearing on damages related to Plaintiff's FCBA claim.

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 13th day of March, 2007, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**